IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JERRY SILVERMAN, individually and as owner and operator of BIOTICA, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:04-CV-1772-L |
| BOOKZONE, INC. and AESIR NETWORK TECHNOLOGIES, | § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Bookzone Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and in the Alternative Motion to Transfer, filed November 30, 2004. After careful consideration of the motion, response, reply, record and applicable law, the court **denies** Defendant Bookzone Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue; and **grants** Defendant Bookzone Inc.'s Alternative Motion to Transfer.

**I.     Factual and Procedural Background**

Plaintiff Jerry Silverman ("Silverman" or "Plaintiff") filed this action on August 13, 2004, against Bookzone, Inc. ("Bookzone"). Silverman amended his complaint on December 23, 2004, adding Aesir Network Technologies ("Aesir") as a defendant. Silverman operates Biotica, Inc. ("Biotica") in Shrewsbury, Massachusetts. Biotica sells nature books, video tapes and related material. Bookzone is an Arizona corporation, with its principal place of business in Phoenix, Arizona. Prior to going out of business, Bookzone developed and hosted internet websites. Aesir

is a Texas corporation, with its principal place of business in Dallas, Texas. Aesir also develops and hosts websites.

Silverman entered into a contract with Bookzone on August 24, 2000, for Bookzone to design, operate, maintain, and service a website and shopping cart[1] for Silverman called "bioticabooks.com." On or about November 1, 2003, Bookzone and Aesir entered into an agreement wherein Bookzone transferred its clients' websites to Aesir's servers. Thereafter, Bookzone ceased all operations. There were problems with Biotica's website and shopping cart after the transfer to Aesir. Silverman contends that the website was unavailable to his customers. Eventually, the website was removed from Aesir's servers.[2]

Silverman brings this action alleging, among other things, breach of contract, breach of warranty, negligence, fraud, negligent misrepresentation, malpractice, and tortious interference with business relations. Silverman seeks correction to the problems associated with the website, monetary damages for lost income, compensatory damages, attorney's fees and costs.

On November 30, 2004, Bookzone filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2),(3), contending that the case should be dismissed for lack of personal jurisdiction and improper venue. In the alternative, Bookzone moves for a transfer of venue to the District of Arizona pursuant to 28 U.S.C. § 1404(a). The court now considers Bookzone's motions. In resolving the motions, the court relies on the standards set forth in the following section.

---

[1] A shopping cart is a website feature that allows customers to purchase products on-line.

[2] Aesir maintains that the removal was because Silverman failed to pay for service. Aesir's Original Answer ¶17.

**Memorandum Opinion and Order - Page 2**

**II.     Legal Standards**

    **A.     Motion to Dismiss for Lack of Personal Jurisdiction**

On a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*, proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine

**Memorandum Opinion and Order - Page 3**

whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the

judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (quoting *Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

**B.     Section 1404(a) Transfer**

With respect to section 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). In applying section 1404(a), a district court is to first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003)). Once this initial determination is made, a district court

> turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public interest factors, none of which [is] given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties

> flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen AG*, 371 F.3d at 203 (citations omitted)**.**

### III.  Analysis

#### A.  Motion to Dismiss for Lack of Personal Jurisdiction

Bookzone contends that its motion to dismiss should be granted because it lacks sufficient contacts with Texas to satisfy the requirements for general or specific jurisdiction. Specifically, Bookzone asserts that Silverman and Bookzone are not Texas residents and do not conduct business regularly in Texas; and that all communications, transactions, including the drafting and signing of the contract, occurred in Arizona or Massachusetts. Bookzone identifies the transfer of Silverman's website to Aesir, as the only link to Texas. Bookzone maintains, however, that the transfer of the website to Aesir does not give the court personal jurisdiction over Bookzone, as it was not sufficiently continuous, systematic or substantial. Bookzone also asserts that this court does not have specific jurisdiction over it because the controversy did not arise out of the transfer of the website to Aesir, but rather out of Bookzone's conduct in Arizona in developing Biotica's website and shopping cart, and allegedly breaching the written and oral representations of the service agreement entered into by the parties. Finally, Bookzone maintains that the court's exercise of personal jurisdiction over it does not comport with fair play and substantial justice as: (1) litigating in Texas significantly burdens Bookzone which is no longer in business; (2) this dispute is between residents of Arizona and Massachusetts regarding a contract governed by Arizona law; (3) all of the

evidence relating to the development of the website and shopping cart is in Arizona; and (5) Arizona has a greater interest in resolving this dispute than Texas.  Defendant's Motion to Dismiss at 9-12.

In response, Silverman maintains that "a substantial part of the events or omissions giving rise to the claim occurred within this district and division."  Plaintiff's Response at 2.  Silverman asserts that: (1) Aesir, a Texas corporation, is subject to personal jurisdiction in this district and division; (2) Bookzone has developed websites in Dallas, Texas; (3) Mary Westheimer[3] frequently visits Dallas, Texas as a conference speaker; (4) the transfer of his website and shopping cart to Aesir's server was the cause of the problem with the website; and (5) Bookzone admitted in its motion to dismiss that the representations and contract have a Texas connection.  *Id.*  The court concludes that Bookzone's contacts with Texas are insufficient to establish personal  jurisdiction.

This action derives from a contractual relationship between Silverman and Bookzone.  In general, when a plaintiff bases specific jurisdiction on a contractual relationship, the court must consider the "factors of prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999) (citing *Burger King*, 471 U.S. at 478).  Bookzone, an Arizona company, developed a website in Arizona for a Massachusetts company pursuant to an agreement construed and governed by the laws of Arizona.  Bookzone maintained the website until it was transferred to Aesir, a Texas company.  Thereafter, the service and maintenance of the website were Aesir's responsibility.  Once the website was transferred to Aesir's server, Bookzone ceased operations and did not contemplate any future contact within Texas.  Thus,

---

[3]The court notes that Westheimer is listed as Bookzone's registered agent for service in Silverman's amended complaint.  Silverman provides no other information regarding Westheimer or her role in the company.  The court was unable to discern if it is Westheimer's signature as CEO on the service agreement entered into by Silverman and Bookzone.  *See* Exhibit B to the amended complaint.

**Memorandum Opinion and Order - Page 7**

Bookzone would not have reasonably anticipated being "haled into court" in Texas. *See Electrosource, Inc.,* 176 F.3d at 872. "[M]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (citing *Burger King,* 471 U.S. 462 (1985)). Bookzone's contract with Aesir, therefore, was insufficient to subject it to jurisdiction in Texas. Further, Silverman cannot impute the contacts of Aesir to Bookzone. The court's jurisdiction over Aesir does not establish personal jurisdiction as to Bookzone. Minimum contacts must be met as to each defendant. *See Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980).

Silverman asserts that Bookzone developed more than 3,500 websites across the U.S. and Dallas. This assertion, unsupported by affidavit or other evidence, is insufficient to establish a prima facie case for the court's jurisdiction over Bookzone. In establishing a prima facie case, Silverman must show that Bookzone purposefully availed itself of the benefits and protections of Texas. *See Burger King,* 471 U.S. at 474. Silverman simply makes bare assertions that Bookzone has developed websites in Dallas. The court, however, is not required to credit conclusory allegations such as these, or reach farfetched inferences from such allegations, even if they are uncontroverted. *See Panda v. Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 868-69 (5th Cir. 2001). Thus even if Bookzone has developed websites for other Texas companies, Silverman has not established that such contact is continuous, systematic, and substantial, or was directly related to Silverman's cause of action. That Bookzone has engaged in business *with* a Texas company does not mean it is doing business *in* Texas. *See Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).

**Memorandum Opinion and Order - Page 8**

Silverman's assertion regarding Mary Westheimer's visits to Dallas as a conference speaker is likewise insufficient to establish a prima facie case for the court's jurisdiction. Again, the assertion is unsupported by affidavits or other evidence. Further, such alleged visits to Texas by Westheimer are not directly related to Silverman's cause of action or are continuous, systematic, and substantial. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984). Furthermore, visiting Texas to speak at a conference does not mean that Westheimer purposefully availed herself of the privileges of conducting activities in this state so as to invoke the benefits and protections of Texas laws, *see Burger King*, 471 U.S. at 475; nor would such visits cause Westheimer to reasonably anticipate being "haled into court" in Texas. Thus, such contacts by Westheimer are not of the continuous or systematic nature required for the exercise of personal jurisdiction. *See Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir. 2000) (quoting *Helicopteros,* 466 U.S. at 414).

In response to Silverman's contention that Bookzone admits in its motion to dismiss that oral representations and the contract have connection to Texas, Bookzone maintains that the statement was a typographical error, and that the sentence "should have read that the representations and contract have ***no*** connection to Texas." Defendant's Reply at 5. Reading the sentence in context with the entire paragraph, and Bookzone's motion to dismiss, it is clear that the word "no" was inadvertently omitted from the sentence and that Bookzone was not making an admission of contact with Texas.

The court concludes that Bookzone's contact with Texas does not arise from, or is directly related to, the cause of action in this case so as to give the court specific personal jurisdiction over Bookzone. Moreover, Bookzone did not have contacts with Texas that were continuous, systematic

and substantial for the court to exercise general personal jurisdiction. Accordingly, Plaintiff has failed to establish the existence of general or specific personal jurisdiction over Bookzone.

### B. Motion to Dismiss for Improper Venue or Alternatively to Transfer

Bookzone contends that venue is improper in this judicial district because Silverman's claims do not arise from events or omissions occurring in Texas, but rather in Arizona. Alternatively, Bookzone requests the court to transfer this case to the District of Arizona pursuant to 28 U.S.C. § 1404(a). The court agrees that the case should be transferred to the appropriate venue.

If a district court concludes that it lacks jurisdiction over a civil case, it may "in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631. Moreover, if a court determines that the plaintiff has brought his case in the wrong venue, the court may at its discretion and "in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see CD Solutions, Inc. v. Tooker*, 965 F.Supp. 17, 20-21 (N.D. Tex. 1997) (finding that transfer to the district where the defendants resided rather than dismissal would serve the interest of justice where the court concluded personal jurisdiction was lacking in an internet-related case) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962)).

Applying § 1404(a), the court determines that Silverman could have brought this action in the District of Arizona, as it is the place where a substantial part of the events or omissions giving rise to the claim occurred. The court next considers and applies the eight factors enumerated in *In re Volkswagen AG*, 371 F.3d 201(5th Cir. 2004), relevant to the convenience of the parties and witnesses, and the interest of justice. The court determines that six of the factors — the relative ease of access to sources of proof; the availability of compulsory process to secure the attendance of

witnesses; the cost of attendance for willing witnesses; all other practical problems that make trial of a case easy, expeditious and inexpensive; the local interest in having localized interests decided at home; and the familiarity of the forum with the law that will govern the case — support transferring this case to the District of Arizona.

Silverman alleges that Bookzone breached the contract entered into between the parties. Bookzone was headquartered in Arizona. Bookzone's former employees and other witnesses, knowledgeable regarding the development and maintenance of the Biotica website and the transfer of the website to Aesir, are located in Arizona. Other documentation, such as the books, records, and correspondence related to Bookzone, the website, and the contract are located in Arizona. Thus, access to sources of proof, the cost and process of securing witness attendance, and the ease and expense of trial, weigh in favor of trying this case in the District of Arizona. As this case involves a former Arizona company, the factor of "the local interest in having localized interests decided at home," also weighs in favor of trying this case in the District of Arizona. Further, the contract between the parties is construed and governed by the laws of Arizona. Thus, an Arizona court would be familiar with the laws that govern this case.

The factor concerning the administrative difficulties flowing from court congestion was not briefed by either party. The court, therefore, cannot determine whether this factor weighs in favor of or against a transfer. The remaining factor— the avoidance of unnecessary problems of conflict of laws — has no impact in this case and is essentially neutral. As six of the eight factors clearly weigh in favor of a transfer, the court concludes that, for the convenience of the parties and witnesses, and in the interest of justice, the case against Bookzone should be transferred to the

District of Arizona where a substantial part of the alleged events or omissions giving rise to the claim occurred.

**Memorandum Opinion and Order - Page 12**

## IV.     Conclusion

For the reasons stated herein, the court determines that Silverman has failed to establish a prima facie case that the court has personal jurisdiction over Bookzone. The court determines, however, that in the interest of justice, the claims against Bookzone should be severed from this action and transferred as a separate action to Phoenix, Arizona. Accordingly, the court **denies** Defendant Bookzone's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue; **grants** Bookzone's Alternative Motion to Transfer claims against it to Phoenix, Arizona; **severs** Plaintiff's claims against Bookzone from this action and **transfers** them as a separate action to the United States District Court, District of Arizona at Phoenix. The clerk of the court shall effect the transfer in accordance with this order.

**It is so ordered** this 9th day of August, 2005.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge